UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Moses Singleton,<br><br>    Plaintiff,<br><br>v.<br><br>First Premier Bank; Stellantis Financial Services, Inc.; Lockhart, Morris, & Montgomery Inc.; NCB Management Services, Inc.; Experian Information Solutions, Inc.; and Transunion, LLC,<br><br>    Defendants. | Case No. |

## COMPLAINT

### INTRODUCTION

1. This is an action brought by an individual consumer for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### PARTIES

4. Plaintiff is a resident of the County of Henry, Georgia.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7. Defendant First Premier Bank, ("First Premier") exists and operates under the laws of the State of Georgia and is a furnisher of consumer credit information to consumer reporting agencies.

8. Defendant Stellantis Financial Services, Inc., ("Stellantis") exists and operates under the laws of the State of Georgia and is a furnisher of consumer credit information to consumer reporting agencies.

9. Defendant Lockhart, Morris, & Montgomery Inc., ("LMM") exists and operates under the laws of the State of Georgia and is a furnisher of consumer credit information to consumer reporting agencies.

10. Defendant NCB Management Services, Inc., ("NCB") exists and operates under the laws of the State of Georgia and is a furnisher of consumer credit information to consumer reporting agencies.

11. LMM and NCB were both at all relevant times engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

12. LMM and NCB are each a "debt collector" as defined by 15 U.S.C. § 1692a(6).

13. Defendant Experian Information Solutions, Inc. ("Experian") is company existing and operating under the laws of the State of Georgia that engages in the business of maintaining and reporting consumer credit information.

14. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

15. Defendant Transunion, LLC ("Transunion") is company existing and operating under the laws of the State of Georgia that engages in the business of maintaining and reporting consumer credit information.

16. Transunion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

17. Plaintiff is a consumer who is the victim of inaccurate reporting by Defendants First Premier, LMM, NCB, Stellantis, Experian, and Transunion (collectively "Defendants") and has suffered particularized and concrete harm.

18. Experian and Transunion are two of the largest consumer reporting agencies ("CRA") as defined by 15 U.S.C. §1681a(f).

19. The CRA's primary business is the sale of consumer reports to third parties and consumers.

20. Experian and Transunion each have a duty of the FCRA, to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681e(b).

21. Plaintiff obtained his Experian and Transunion consumer credit reports.

22. Plaintiff reviewed his Experian consumer report and discovered an unknown NCB account (the "Experian Account").

23. Plaintiff reviewed his Transunion consumer report and discovered an unknown First Premier, LMM, Stellantis, and NCB account (the "Transunion Accounts").

24. The Experian Account and Transunion Accounts (collectively the "Accounts") are believed to be the product of fraud.

25. Plaintiff completed a Federal Trade Commission Identity Theft Report, reporting the fraudulent Accounts.

26. The false information regarding the Accounts appearing on Plaintiff's consumer reports harms Plaintiff because it does not accurately depict Plaintiff's credit history and creditworthiness.

27. Experian and Transunion published the false information regarding the Accounts to third parties.

## WRITTEN DISPUTE

28. Plaintiff sent a written letter to Experian (the "Experian Dispute"), disputing the inaccurate information regarding the Experian Account reporting on Plaintiff's consumer reports.

29. Plaintiff sent a written letter to Transunion (the "Transunion Dispute"), disputing the inaccurate information regarding the Transunion Accounts reporting on Plaintiff's consumer reports.

30. Despite the clarity and detail provided in the Experian and Transunion Dispute (collectively the "Disputes") the inaccurate and unknown Accounts continued to report on Plaintiff's consumer credit reports.

31. Upon information and belief, Experian forwarded Plaintiff's Experian Dispute to NCB for reinvestigation.

32. Upon information and belief, Transunion forwarded Plaintiff's Transunion Dispute to First Premier, LMM, Stellantis, and NCB for reinvestigation.

33. Upon information and belief, NCB received notification of Plaintiff's Disputes from Experian and Transunion.

34. NCB failed to conduct a reasonable investigation, failed to contact Plaintiff or any third-parties, and failed review underlying account information with respect to the disputed information and the accuracy of the disputed information.

35. Upon information and belief, First Premier received notification of Plaintiff's Dispute from Transunion.

36. First Premier failed to conduct a reasonable investigation, failed to contact Plaintiff or any third-parties, and failed review underlying account information with respect to the disputed information and the accuracy of the disputed information.

37. Upon information and belief, LMM received notification of Plaintiff's Dispute from Transunion.

38. LMM failed to conduct a reasonable investigation, failed to contact Plaintiff or any third-parties, and failed review underlying account information with respect to the disputed information and the accuracy of the disputed information.

39. Upon information and belief, Stellanits received notification of Plaintiff's Dispute from Transunion.

40. Stellantis failed to conduct a reasonable investigation, failed to contact Plaintiff or any third-parties, and failed review underlying account information with respect to the disputed information and the accuracy of the disputed information.

41. Experian and Transunion each failed to conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the disputed information.

42. First Premier failed to instruct Transunion to remove the false information reporting on Plaintiff's consumer reports.

43. LMM failed to instruct Transunion to remove the false information reporting on Plaintiff's consumer reports.

44. NCB failed to instruct Transunion and Experian to remove the false information reporting on Plaintiff's consumer report.

45. Stellantis failed to instruct Transunion to remove the false information reporting on Plaintiff's consumer reports.

46. Experian and Transunion each employed an investigation process that was not reasonable and did not remove the false information identified in Plaintiff's Disputes.

47. Experian and Transunion each employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported on Plaintiff's consumer report.

48. At no point after receiving the Disputes did any Defendant communicate with Plaintiff to determine the veracity and extent of Plaintiff's Disputes.

<u>**COUNT I – First Premier**</u>

<u>(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681s-2(b))</u>

49. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

6

50. After receiving the Transunion Dispute, First Premier failed to remove the First Premier Account reporting on Plaintiff's consumer reports.

51. First Premier violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's Disputes; by failing to review all relevant information regarding Plaintiff's Disputes; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of false representations to the consumer credit reporting agencies, among other unlawful conduct.

52. As a result of this conduct, action, and inaction of First Premier, Plaintiff suffered damages, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

53. First Premier's conduct, action, and inaction was willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

54. In the alternative, First Premier was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

55. Plaintiff is entitled to recover costs and attorneys' fees from First Premier pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT II – Stellantis

### (Fair Credit Reporting Act Violation – 15 U.S.C. § 1681s-2(b))

56. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

57. After receiving the Transunion Dispute, Stellantis failed to remove the Stellantis Account reporting on Plaintiff's consumer reports.

58. Stellantis violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's Transunion Dispute; by failing to review all relevant information regarding Plaintiff's Transunion Dispute; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of false representations to the consumer credit reporting agencies, among other unlawful conduct.

59. As a result of this conduct, action, and inaction of Stellantis, Plaintiff suffered damages, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

60. Stellantis's conduct, action, and inaction was willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

61. In the alternative, Stellantis was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

62. Plaintiff is entitled to recover costs and attorneys' fees from Stellantis pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT III – LMM

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681s-2(b))

63. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

64. After receiving the Transunion Dispute, LMM failed to correct the false information regarding the LMM Account reporting on Plaintiff's consumer reports.

65. LMM violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's Disputes; by failing to review all relevant information regarding Plaintiff's Disputes; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of false representations to the consumer credit reporting agencies, among other unlawful conduct.

66. As a result of this conduct, action, and inaction of LMM, Plaintiff suffered damages, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

67. LMM's conduct, action, and inaction was willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

68. In the alternative, LMM was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

69. Plaintiff is entitled to recover costs and attorneys' fees from LMM pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT IV – LMM

(Fair Debt Collection Practices Act Violation – 15 U.S.C. § 1692e)

70. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

71. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

72. "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

73. "It is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

74. More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy as well as insure that debt collectors who refrain from using such practices are not competitively disadvantaged. *See, e.g.,* 15 U.S.C. § 1692(a), (e); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 996 (3d Cir.2011); *Wilson,* 225 F.3d at 354.

75. "[C]ourts have analyzed the statutory requirements [of the FDCPA] 'from the perspective of the least sophisticated debtor.' This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (quoting *Rosenau*, 539 F.3d at 221); *see also Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

76. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148-49 (3d Cir. 2013) (quoting *Lesher,* 650 F.3d at 997).

77. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

78. Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

79. Thus, the plain-language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse").

80. Under the same general prohibition of false, misleading, or deceptive debt collection practices, the FDCPA prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false. . . ." 15 U.S.C. § 1692e(8).

81. LMM violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debt, including by reporting false information to the credit reporting agencies concerning Plaintiff, and by failing to correct the false information once disputed.

## COUNT V– NCB

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681s-2(b))

82. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

83. After receiving the Transunion and Experian Dispute, NCB failed to remove the NCB Account reporting on Plaintiff's consumer reports.

84. NCB violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's Transunion and Experian Dispute; by failing to review all relevant

information regarding Plaintiff's Transunion and Experian Dispute; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of false representations to the consumer credit reporting agencies, among other unlawful conduct.

85. As a result of this conduct, action, and inaction of NCB, Plaintiff suffered damages, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

86. NCB's conduct, action, and inaction was willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

87. In the alternative, NCB was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover costs and attorneys' fees from NCB pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT VI – NCB

(Fair Debt Collection Practices Act Violation – 15 U.S.C. § 1692e)

89. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

90. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v.*

*Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

91. "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

92. "It is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

93. More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy as well as insure that debt collectors who refrain from using such practices are not competitively disadvantaged. *See, e.g.,* 15 U.S.C. § 1692(a), (e); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 996 (3d Cir.2011); *Wilson,* 225 F.3d at 354.

94. "[C]ourts have analyzed the statutory requirements [of the FDCPA] 'from the perspective of the least sophisticated debtor.' This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (quoting *Rosenau*, 539 F.3d at 221); *see also Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

95. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148-49 (3d Cir. 2013) (quoting *Lesher,* 650 F.3d at 997).

96. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

97. Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

98. Thus, the plain-language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse").

99. Under the same general prohibition of false, misleading, or deceptive debt collection practices, the FDCPA prohibits a debt collector from "[c]ommunicating or

threatening to communicate to any person credit information which is known or which should be known to be false. . . ." 15 U.S.C. § 1692e(8).

100. NCB violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debt, including by reporting false information to the credit reporting agencies concerning Plaintiff, and by failing to correct the false information once disputed.

<u><b>COUNT VII – Experian and Transunion</b></u>

<u>(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681e(b))</u>

101. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

102. After receiving the Experian Dispute, Experian failed to correct the false information reporting on Plaintiff's consumer report.

103. After receiving the Transunion Dispute, Transunion failed to correct the false information reporting on Plaintiff's consumer report.

104. Experian and Transunion each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

105. As a result of this conduct, action and inaction of Experian and Transunion, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and

usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

106. The conduct, action, and inaction of Experian and Transunion was willful, rendering each liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

107. In the alternative, Experian and Transunion each was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

108. Plaintiff is entitled to recover costs and attorneys' fees from Experian and Transunion each pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT VIII – Experian and Transunion

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681i)

109. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

110. After receiving the Experian Dispute, Experian failed to correct the false information reporting on Plaintiff's consumer report.

111. After receiving the Transunion Dispute, Transunion failed to correct the false information reporting on Plaintiff's consumer report.

112. Experian and Transunion each violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files, and by failing to provide Plaintiff with a description of its procedures used to determine the accuracy and completeness of the disputed information.

113. As a result of this conduct, action and inaction of Experian and Transunion, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

114. The conduct, action, and inaction of Experian and Transunion was willful, rendering each liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

115. In the alternative, Experian and Transunion each was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

116. Plaintiff is entitled to recover costs and attorneys' fees from Experian and Transunion each pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against Defendants for willful noncompliance of the Fair Credit Reporting Act and seeks remedies as defined by 15 U.S.C. § 1681 and demands:

1. Trial by jury.

2. Actual damages to be proven at trial, or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), of not less than $100 and not more than $1,000 per violation;

3. Punitive damages, pursuant 15 U.S.C. § 1681n(a)(2), for each Defendant's willful violation;

4. The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and

5. Any further legal and equitable relief as the court may deem just and proper in the circumstances.

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against NCB and LMM each for noncompliance of the Fair Debt Collection Practices Act and seeks remedies as defined by 15 U.S.C. § 1692 and demands:

1. Adjudging that NCB and LMM each violated 15 U.S.C. § 1692e;

2. Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

3. Awarding Plaintiff actual damages to be proven at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

4. Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

5. Any further legal and equitable relief as the court may deem just and proper in the circumstances.

Dated: March 25, 2024

                                      */s/ Esther Oise*
                                      Esther Oise, Esq. (GA Bar #686342)

                Oise Law Group PC
                2635 Governors Walk Blvd.
                Snellville, GA 30078
                Email: oiselaw@gmail.com
                Telephone: (770) 895-3736
                Attorney for Plaintiff